# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TIMOTHY SHAWN MANN,
        Plaintiff,

  v.                                       Case No. 05-C-1272

SUE ANN PETERSON, TOM VANDENBOOM,
GEORGE RANIER, ANN WELVANG, and
TOM DARNIEDER,
        Defendants.

## DECISION AND ORDER

Plaintiff Timothy Shawn Mann, a state prisoner proceeding pro se, lodged this complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Currently pending are plaintiff's petition to proceed in forma pauperis and motion to voluntarily dismiss this action. Both applications will be addressed herein.

As a preliminary matter, plaintiff moved to voluntarily dismiss this case on April 27, 2006. However, on May 25, 2006, plaintiff subsequently asked me to disregard his earlier request for voluntary dismissal. Thus, plaintiff's April 27, 2006, motion to voluntarily dismiss this action will be denied.

Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is required to pay the statutory filing fee of $250.00 for this action.[1] If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma

---

[1] Plaintiff lodged his complaint prior to April 9, 2006, when the filing fee for civil actions in the Eastern District of Wisconsin increased to $350.00.

pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.[2]

In this case, plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. The prisoner has been assessed and paid an initial partial filing fee of $82.00. Thus, plaintiff shall be permitted to proceed in forma pauperis.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully

---

[2] In no event will a prisoner be prohibited from bringing a civil action because he or she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 [1957]). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to plaintiff, and resolve all doubts in plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley, 355 U.S. at 47); see also Thomson v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for pro se prisoner civil rights complaint). Of course, if a complaint pleads facts that show that a plaintiff does not have

3

a claim, the complaint should be dismissed "without further ado." Thomson, 362 F.3d at 970.

Plaintiff was incarcerated at Marshal Sherrer Correctional Center (MSCC) at all times relevant. (Complaint at 4). Defendants are all MSCC employees. Id. Defendant Sue Ann Peterson is a social worker; defendant Thomas Vandenboom is the superintendent; defendant George Ranier is employed as a captain; defendant Ann Welvang is the kitchen supervisor; and defendant Tom Darnieder is the work release coordinator. Id.

The complaint states that on or about April 26, 2005, defendant Peterson "discovered she was being sued by [plaintiff]." Id. at 5. Sometime during April 2005, Peterson also learned that defendant Vandenboom and Warden Mickey McCash (who is not a named defendant) had been served with a summons in connection with another lawsuit that plaintiff had filed. Id. at 6. Peterson and defendants Welvang, Ranier, Darnieder and Vandenboom then "had a secret meeting and all agreed for [plaintiff]'s emmediate (sic) termination of his 1 year cook commitment and emmediate (sic) transfer solely because [plaintiff] filed a 1983 civil rights complaint and lawsuit" against them. Id. at 6.

From January to April 2005, plaintiff was mistreated by his kitchen supervisor and Captain Rainer. Id. On April 26, 2005, plaintiff was called into Peterson's office "and told that Ms. Peterson and four staff members all agreed on terminating [his] cook commitment and transfer emmediately (sic) the following week." Id. Peterson threatened to: (1) terminate plaintiff's employment; (2) transfer him to a medium security institution; (3) deprive him of work-release; (4) change his status as a minimum security inmate; (5) put him in the hole; and (6) issue him a ticket. Id. Plaintiff's July 14, 2005, Program Review Committee

4

report "substantiates every threat made by Ms. Peterson, that she told [plaintiff] in her office on 4/26/05." Id.

Plaintiff contends that defendants violated his rights under the First Amendment. Id. For relief, he requests that this court rule in his favor and award him $25,000 for missed work and release wages for the year of August, 2005 to July, 2006. Id. at 7.

**A.  Retaliation Claim**

Plaintiff contends that defendants retaliated against him for filing a civil rights complaint against defendant Peterson. Prisoners have a Fourteenth Amendment due process right to adequate, effective, and meaningful access to the court to challenge violations of their constitutional rights. Bounds v. Smith, 430 U.S. 817, 821-22 (1977). Prison officials cannot retaliate against prisoners who attempt to exercise their constitutional rights. Williams v. Lane, 851 F.2d 867, 878 (7th Cir. 1988). A plaintiff must plead three elements in order to state a claim for retaliation: he must "specif[y] a retaliatory action;" he must name the appropriate defendants; and he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." Hoskins v. Lenear, 395 F.3d 372, 275 (7th Cir. 2005). Plaintiff has met this standard: he identified the threats as the retaliatory action; he specified the relevant defendants; and he invoked his constitutional right to use the prison grievance procedure. See id. Thus, I find that plaintiff has alleged facts sufficient to state a First Amendment retaliation claim.

**B.  Due Process Claims**

A thorough reading of the complaint reveals that plaintiff has only alleged that defendants violated his rights under the First Amendment. However, plaintiff contends that

5

Case 2:05-cv-01272-LA   Filed 11/21/06   Page 5 of 10   Document 10

defendant Peterson threatened to: (1) terminate his employment; (2) transfer him; (3) deprive him of work-release; (4) change his status as a minimum security inmate; (5) put him in the hole; and (6) issue him a disciplinary ticket. Accordingly, these allegations will be addressed in turn.

First, plaintiff seems to suggest that he has a constitutional right to employment during his incarceration. However, it is clear that inmates have no constitutionally protected interest in receiving or retaining a prison job. Harris v. Fleming, 839 F.2d 1232, 1237 n.5 (7th Cir. 1988); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980). In addition, inmates have no constitutional right to any payment for their services. Manning v. Lockhart, 623 F.2d 536, 538 (8th Cir. 1980); Woodall v. Partilla, 581 F. Supp. 1066, 1077 (N.D. Ill. 1984). Indeed, any compensation prisoners receive is by the grace of the state. Hrbek v. Farrier, 787 F.2d 414, 416 (8th Cir. 1986); Brown v. McBride, 929 F. Supp. 1132 (N.D. Ind. 1996). Therefore, to the extent plaintiff claims that he is entitled to compensation for work he performed while incarcerated, he has failed to allege facts of a constitutional magnitude.

Next, plaintiff contends that defendant Peterson threatened to transfer him. To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. See Sandin v. Connor, 515 U.S. 472, 483-84 (1995). Transfer to another correctional facility does not implicate the Due Process Clause of the Fourteenth Amendment. Hoskins v. Lenear, 395 F.3d 372, 395 (7th Cir. 2005) (prisoner's demotion in status, segregation, and transfer raise no due process concerns). Thus, plaintiff's assertion that Peterson threatened to transfer him fails to rise to the level of a constitutional violation.

6

Plaintiff further asserts that defendant Peterson threatened to recommend that plaintiff lose his work release. As noted, a prisoner must demonstrate that he was deprived of a liberty interest to establish a due process violation. Sandin, 515 U.S. at 483-84. However, the Court of Appeals for the Seventh Circuit has indicated that Wisconsin prisoners have no liberty interest in work release. See Grennier v. Nagle, 1995 U.S. App. LEXIS 38335 (7th Cir. Dec. 18, 2005). Furthermore, plaintiff has not indicated that his work release was actually revoked. Rather, plaintiff complains that defendant Peterson threatened to revoke his work release because he filed a lawsuit against Peterson. The absence of an actual or imminent injury, as opposed to a merely speculative future one, deprives federal courts of jurisdiction under Article III, which empowers the federal judiciary to decide "cases" or "controversies." Marshall v. Knight, 445 F.3d 965 (7th Cir. 2006). Based on the foregoing, plaintiff has failed to state a claim of constitutional magnitude.

Plaintiff also claims that defendant Peterson threatened to change plaintiff's status as a minimum security prisoner. However, it is well settled that prison inmates does not have a liberty interest in remaining in a specific security classification. Thiel v. Wisconsin, 399 F. Supp. 2d 929, 934 (W.D. Wis. 2005)(citing Sandin, 515 U.S. at 483-84). Accordingly, plaintiff has failed to state a claim based on the change in his security status.

Plaintiff maintains that defendant Peterson threatened to send him to the hole. I construe this as a claim that Peterson threatened plaintiff with disciplinary segregation. A liberty interest exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin 515 U.S. at 484. However, discipline in segregated confinement does not present the type of atypical, significant deprivation in which a State might conceivably

7

create a liberty interest. Id. at 485; see also Thomas v. Ramos, 130 F.3d 754, 760-62 (7th Cir. 1998) (prison inmate's 70-day confinement in disciplinary segregation was not "atypical and significant" deprivation of prisoner's liberty and thus did not implicate liberty interest protectable under due process clause). Accordingly, plaintiff may not proceed on a claim based on disciplinary segregation punishment.

Finally, plaintiff asserts that defendant Peterson threatened to issue him a disciplinary ticket. Notably, plaintiff does not claim that he was actually issued a ticket. Morever, he does not indicate that he received any punishment as a result of receiving a ticket. See Moore v. Pemberton, 110 F.3d 22 (7th Cir. 1997) (prisoner's complaint about baseless disciplinary ticket that did not claim a loss of any liberty or property failed to state a due process claim). Therefore, plaintiff's allegation that Peterson threatened to issue him a ticket fails to state a constitutional claim.

**C.     Relief Requested**

For relief, plaintiff requests $25,000 in lost work-release wages. As noted, plaintiff has failed to state a claim based on his allegation that defendant Peterson prevented him from participating in a work-release program. However, plaintiff is proceeding on a retaliation claim against all defendants. Thus, it is unclear if he is seeking additional relief beyond the work-release wages. Therefore, I will await a further clarifying submission as to what further relief (if any) plaintiff is seeking, and against whom.

**ORDER**

**IT IS THEREFORE ORDERED** that the plaintiff's request to proceed in forma pauperis (Doc. #2) is **GRANTED**.

8

**IT IS FURTHER ORDERED** that plaintiff's motion to voluntarily dismiss this case (Doc. #8) is **DENIED.**

**IT IS ALSO ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4.

**IT IS ORDERED** that defendants shall file a responsive pleading to the complaint.

**IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $168.00 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 21 day of November, 2006.

/s_____
LYNN ADELMAN
District Judge